IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KHAI BUI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-1387 (RDA/IDD) |
| | ) |
| KOONS OF TYSONS CORNER INC., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Koons of Tysons Corner, Inc.'s and Top Japanese Mechanics Inc.'s Motions to Dismiss. Dkt. Nos. 11; 14. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motions, the accompanying Memoranda in Support (Dkt. Nos. 12; 15) and Plaintiff's responses to the Motions (Dkt. Nos. 19; 20), this Court GRANTS Koons's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 14) for the following reasons.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Khai Bui resides in Maryland and owns a Jeep vehicle. Dkt. 5 at 4. On multiple occasions between April 25, 2019 and December 8, 2020, he sought service on that vehicle from Defendants Koons and TJM. *Id.* at 4-5.

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff first sought service from Koons on April 25, 2019, for a battery replacement, oil change, and inspection. Dkt. 1, Ex. 5.² During that visit, Koons asked him if he would like additional services to be performed, including a 120,000-mile tune-up and replacement of several parts. *Id.* at 12. Plaintiff declined that offer. *Id.*, Ex. 5. On July 2, 2019, Plaintiff returned to Koons, this time citing concerns regarding an engine mount. *Id.*, Ex. 6. Koons replaced the rear motor engine mount the next day. *Id.*

Plaintiff did not visit Koons again until January 25, 2020. *Id.* That day, he requested a "check and clear" for engine codes. *Id.* Almost three months later, on April 15, 2020, Plaintiff sought diagnostic services from Koons after the vehicle's engine stalled. *Id.*, Ex. 9. Koons assessed the vehicle, determined that an overcharged alternator caused the engine to stall, and eventually repaired the alternator. *Id.*, Ex. 9 & at 14. Approximately one week later, Plaintiff's vehicle once again failed to start and made a "grinding" noise. *Id.* at 14 & Ex. 10. Koons then diagnosed a starter malfunction as the cause and repaired the starter. *Id.*, Ex. 10.

In the meantime, Plaintiff also turned to TJM for help with his Jeep. Specifically, he went to TJM for a thermostat installation on July 7, 2020. Dkt. 5 at 4. Apparently, on that day, TJM cut thermostat coolant hoses without an invoice, which subsequently resulted in the vehicle requiring a tow to Koons for further repair. *Id.*

Plaintiff then went back to Koons in October of 2020. On October 27, 2020, he requested an engine check due to the vehicle overheating. Dkt. 1, Ex. 13. Koons did what Plaintiff requested

---

² Plaintiff's amended complaint (Dkt. 5) did not include the receipts and other exhibits that were attached to his original complaint (Dkt. 1). While a plaintiff's amended complaint generally supersedes his original complaint, this Court considers the exhibits and attachments to the original complaint in the interest of construing this *pro se* Plaintiff's complaint liberally. *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010). Accordingly, the Court cites to both the original complaint and the amended complaint.

but did not identify an overheating problem. *Id*. However, Koons also told Plaintiff the vehicle was "unfixable." *Id.* Nevertheless, Plaintiff was not deterred and sought services—including a cooling system diagnosis and a road test—from Koons for a final time on December 8, 2020. *Id.* at 15 & Ex. 13. After conducting the requested test, Koons identified and repaired a radiator leak. *Id.*, Ex. 13. However, four months later, the check engine light returned and the engine had a high driving temperature. *Id.* at 15.

Plaintiff seeks compensatory damages (also known as "actual damages") of $11,489.18 in total—$10,094.36 from Koons and $1,394.82 from TJM. Dkt. 5 at 4. Plaintiff also claims that he is entitled to treble damages for Koons and TJM's willful violations of the VCPA, totaling $34,466.04. *Id.* Finally, in addition to compensatory and treble damages, Plaintiff seeks $2 million in punitive damages: $1.76 million from Koons and $240,000 from TJM. *Id.*

### B. Procedural Background

Plaintiff filed his initial Complaint on December 5, 2022. Dkt. 1. He then filed an Amended Complaint on December 8, 2022. Dkt. 5. After process was served, TJM filed a Motion to Dismiss for Failure to State a Claim on December 20, 2022. Dkt. 11. Koons also filed its own Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction. Dkt. 14. Plaintiff responded to TJM's Motion on December 29, and to Koons's Motion on January 17, 2023. Dkt. Nos. 19; 20. Plaintiff filed a Motion for Default Judgment on April 14, Dkt. 27, which Koons responded to on April 21, Dkt. 30, and TJM responded to on April 25, Dkt. 32.

## II. STANDARD OF REVIEW

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction over a lawsuit. Fed. R. Civ. P. 12(b)(1). In essence, such a motion contests the "court's authority to hear the

matter brought by a complaint." *Atlantic Cas. Ins. Co. v. United Tours, Inc.*, No. 3:12-cv-680, 2013 WL 2389887, at *1 (E.D. Va. May 30, 2013).

There are two types of 12(b)(1) motions: facial challenges and factual challenges. In a facial challenge, the defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, a factual challenge contends that "the jurisdictional allegations are not true." *Id.* In evaluating a facial challenge, a court takes the alleged jurisdictional facts as true and evaluates whether those facts are sufficient to establish subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In evaluating a factual challenge, the court resolves disputed jurisdictional facts and does not apply the "presumption of truthfulness normally accorded [to] a complaint's allegations." *Id.*

A plaintiff bears the burden to demonstrate that subject matter jurisdiction exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A court should only grant a 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### III. ANALYSIS

Koons argues that Plaintiff's Complaint should be dismissed for lack of diversity jurisdiction because Plaintiff's claims do not satisfy the $75,000 amount-in-controversy requirement. Dkt. 15 at 6. Koons acknowledges that punitive damages may be factored into the amount-in-controversy requirement for purposes of diversity jurisdiction; however, Koons argues that punitive damages may not be used as a predicate to establish diversity jurisdiction when it is clear with "legal certainty" that Plaintiff cannot recover the identified amount. *Id.* Koons

4

maintains that Plaintiff may theoretically recover a maximum of $34,467.54: the VCPA caps damages for willful and malicious conduct at three times actual damages, and, according to Koons, any punitive damages above treble damages for willful misconduct would constitute an impermissible double recovery and therefore cannot be used to satisfy the amount-in-controversy requirement. *Id.* at 7. Plaintiff has not provided any substantive arguments in response.

Subject matter jurisdiction is a threshold requirement to get into court. "Subject matter jurisdiction defines the court's authority to hear a given type of case[.]" *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up). "Federal courts are courts of limited jurisdiction[,]" which is restricted to statutory grants of jurisdiction. *Ins. Corp. of Ireland v. Compaigne des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).

"The burden of establishing subject matter jurisdiction rests upon the party asserting it." *Sierra Club v. Army Corps of Eng.*, 981 F.3d 251, 257 (4th Cir. 2020) (citing *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "When a party desires to proceed in a federal court, it 'must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014) (quoting *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008)).

Congress has conferred subject matter jurisdiction on federal courts primarily in two areas: federal question jurisdiction and diversity jurisdiction. Here, Plaintiff does not (and cannot) attempt to establish federal question jurisdiction. Instead, Plaintiff seeks to establish subject matter jurisdiction through diversity. Dkt. 5 at 3. Diversity jurisdiction is established in disputes where all parties are citizens of different states and the amount-in-controversy exceeds $75,000. 28 U.S.C. § 1332(a). Citizenship is not disputed in this case: Plaintiff alleges that he is a resident of Maryland and that Defendants are incorporated and have their principal places of business in

Virginia. *Id.* at 4, 7. With complete diversity of citizenship undisputed, this Court must determine whether Plaintiff can satisfy the $75,000 minimum amount-in-controversy requirement to establish diversity jurisdiction.

### A. Plaintiff's Claimed Damages

Plaintiff claims that he is entitled to $11,489.18 in actual damages and $2 million in punitive damages. Dkt. 5 at 4. On their face, Plaintiff's claimed damages satisfy the amount-in-controversy requirement. And, in general, a plaintiff's claimed damages amount controls the diversity jurisdiction amount-in-controversy requirement, provided that "plaintiff's amount-in-controversy allegation is . . . made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).

But a plaintiff's claimed damages do not end the subject matter jurisdiction inquiry in all cases. In particular, "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Lauter v. Glaxosmithkline*, No. 2:16-cv-716, 2017 WL 3449589, at *2 (E.D. Va. Mar. 3, 2017) (cleaned up). While punitive damages are "typically included in the amount in controversy calculus," *id.*, if it is clear "to a legal certainty, that the plaintiff cannot recover the amount claimed . . . the suit [may] be dismissed," *Microstrategy Servs. Corp. v. Openrisk, LLC*, No. 1:14-cv-1244, 2015 WL 3774485 at *4 (E.D. Va. June 17, 2015) (quoting the Supreme Court's legal certainty test, as articulated in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The legal certainty threshold is met when the "plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount[.]" *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

B. Punitive Damages Under Applicable Virginia Law

Attempting to satisfy diversity jurisdiction, Plaintiff contends he is entitled to punitive damages in excess of $75,000 for willful and malicious violations of Virginia law. Dkt. 5 at 4-5. Plaintiff specifically points to Defendants purportedly "earn[ing] money directly from prohibited acts" to support his assertion that the violations were willful and malicious violations. *Id.* at 5.

While it is true that Virginia law permits recovery of punitive damages for willful and malicious violations, it also "imposes a heavy burden on a plaintiff seeking punitive damages." *Blakely v. Austin–Weston Ctr. for Cosmetic Surgery, L.L.C.,* 348 F. Supp. 2d 673, 677 (E.D. Va. 2004).[3] "[I]n Virginia, the standard for establishing punitive damages is beyond even gross negligence" because the primary purpose of punitive damages is to punish wrongdoers acting willfully, wantonly, maliciously, or with disregard for the law. *Adkins v. HBL, LLC*, No. 1:17-cv-774, 2017 WL 4484246, at *2 (E.D. Va. July 18, 2017) (cleaned up). Put simply, to rely on punitive damages to meet the amount-in-controversy requirement, Plaintiff must plausibly allege facts supportive of such damages. *See id.* (granting defendant's Rule 12(b)(1) motion to dismiss because "plaintiff's damages claim does not plausibly allege that defendants acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations" (cleaned up)).

Here, Plaintiff has failed to plausibly allege facts indicative of willfulness or maliciousness. Nowhere in the Complaint or the Amended Complaint are there allegations that, when taken as true (along with reasonable inferences therefrom), suggest maliciousness or willfulness on

---

[3] The parties do not dispute the application of Virginia law, and a "court exercising diversity jurisdiction applies the substantive law of the forum state." *Steele v. Goodman*, 382 F. Supp. 3d 403, 418 n.50 (E.D. Va. 2019) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938))

Defendants' part. Instead, all Plaintiff points to is the Defendants "earn[ing] money directly from prohibited acts." Dkt. 5 at 4-5. But Plaintiff does not specify what "prohibited acts" Defendants undertook, let alone facts that are indicative of willfulness or maliciousness. This, when combined with Plaintiff's request for $2 million in damages, indicates that his punitive damages claim is not plausible. Since his alleged actual damages only amount to slightly over $11,000, rendering his punitive damages essential to meet the amount-in-controversy-requirement, the implausibility (and complete lack of) factual allegations related to punitive damages is fatal to Plaintiff's attempt to establish diversity jurisdiction. *See Adkins v. HBL, LLC*, No. 1:17-cv-774-TSE-TCB, Dkt. 4 at 2-3 (E.D. Va. July 18, 2017) (dismissing complaint for lack of diversity jurisdiction when plaintiff did not "allege any plausible basis for concluding that diversity jurisdiction exists"); *cf. Adkins v. Bank of Am., N.A.*, No. 1:14-cv-563, 2014 WL 3615876, at *6-7 (E.D. Va. July 18, 2014) (dismissing punitive damages claim when plaintiff did not "plausibly allege conduct sufficient to procure an award of punitive damages"); *Jenkins v. Receivables Performance Mgmt., LLC*, No. 5:9-cv-92, 2010 WL 3521735, at *3 (W.D.N.C. Sep. 1, 2010) (similar).

## C. Punitive Damages Under the VCPA

Even if Plaintiff's Complaints pleaded facts evidencing malice and willfulness on Defendants' part, Virginia law would cap the punitive damages available to Plaintiff. Specifically, the Virginia Consumer Protection Act and the Virginia Automobile Repair Facilities Act set a ceiling on punitive damages in an amount that precludes Plaintiff from meeting the amount-in-controversy requirement.

Plaintiff's Complaints do not list specific sections of the VCPA or VARFA that he claims Koons and TJM violated. Instead, he simply states that the VCPA and VARFA provide for a total of $2 million in punitive damages—$1.76 million from Koons and $240,000 in damages from

8

TJM. Dkt. 5 at 4. According to Plaintiff, that satisfies the amount-in-controversy requirement and, therefore, this Court has diversity jurisdiction. *Id.*

The VCPA and VARFA are coterminous as to punitive damages. Violations of VARFA are considered violations of the VCPA. *See* Va. Code Ann. § 59.1-207.6 (1950) ("Any violation of the provisions of this chapter shall constitute a prohibited practice pursuant to the provisions of § 59.1-200 and shall be subject to any and all of the enforcement provisions of Chapter 17 (§ 59.1-196 et seq.) of this title."). As a result, damages for violations of VARFA are governed by § 59.1-204 ("Individual action for damages or penalty") of the VCPA. And so, the VCPA's cap on punitive damages applies to VARFA and VCPA claims alike. *See Reynolds v. Reliable Transmissions, Inc.*, No. 3:9-cv-238, 2010 WL 1375273, at *7 n.6 (E.D. Va. Ap. 2, 2010) (declining to address allegation that Defendant violated VARFA because legal analysis as to VCPA covered VARFA claim).

The VCPA—which, as stated above, also establishes the punitive damages available for violations of VARFA—provides:

> Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Va. Code Ann. § 59.1-204(A) (1950).

Courts have interpreted that to mean that, under the VCPA, if a plaintiff is successful in demonstrating a willful violation, an "award of treble damages . . . is sufficient to further the purposes of a punitive damages award." *Alexander v. Se. Wholesale Corp.*, No. 2:13-cv-213, 2014 WL 1165844 at *9 (E.D. Va. Mar. 21, 2014) (cleaned up).

As a result, it is clear Plaintiff cannot recover the $2 million in punitive damages he claims to satisfy the amount-in-controversy requirement. Damages for willful violations of the VCPA

may only be increased to an "amount not exceeding three times the actual damages sustained." Va. Code Ann. § 59.1-204(A) (1950). Even assuming *arguendo* that Plaintiff had alleged facts supporting a willful violation, the VCPA (and thus also VARFA) does not allow for damages for willful violations beyond treble. *See Henry v. HBI LLC*, 1:14-cv-396, 2014 WL 12917204 at *2 (E.D. Va. May 22, 2014) (holding that because plaintiffs' actual damages were $25,000, plaintiffs could only recover a maximum of $75,000 in punitive damages under the VCPA); *see also Reynolds*, 2010 WL 2640065 at *6 (declining to award damages in addition to treble damages of $1,500 because any additional punitive damages "would suggest a so-called 'double recovery'"). Here, Plaintiff claims $10,094.36 in compensatory damages against Koons and $1,394.83 in compensatory damages against TJM. Dkt. 5 at 4. Total compensatory damages therefore amount to $11,489.19. *Id.* Under the VCPA and VARFA, Plaintiff would be permitted to recover, at most, three times the claimed compensatory damages amount of $11,489.19, for a maximum treble award of $34,467.57. Thus, the maximum amount of total damages Plaintiff could obtain under the law is $45,956.76. It is therefore clear with legal certainty that the VCPA does not permit Plaintiff to meet the $75,000 threshold required for this Court to possess diversity jurisdiction.

Moreover, Plaintiff cannot rely on punitive damages beyond the treble damages permitted by the VCPA to meet the amount-in-controversy requirement, as an award of treble damages for willful violations of the VCPA already acts as punitive damages under Virginia law. *See Reynolds*, 2010 WL 2640065 at *6 (stating that an "award of treble damages under the VCPA is sufficient to further the purposes of a punitive damages award"); *Alexander*, 2014 WL 1165844 at *9 (holding that treble damages under the VCPA are punitive). Allowing Plaintiff to recover any punitive damages in addition to the maximum treble amount of $34,467.57 would constitute an impermissible double recovery. *See Alexander*, 2014 WL 1165844 at *9 (declining to award

10

punitive damages under the VCPA because damages were already awarded under the Odometer Act and additional damages would constitute double recovery). Plaintiff therefore cannot plead punitive damages in excess of treble damages for the purpose of satisfying the diversity amount-in-controversy requirement. Thus, his $2 million claim for damages fails with legal certainty under Virginia law and the VCPA. As a result, this Court lacks jurisdiction and this case must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Koons' Motion to Dismiss for Lack of Jurisdiction (Dkt. 14) is GRANTED; and it is

FURTHER ORDERED that this matter is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that TJM's Motion to Dismiss for Failure to State a Claim (Dkt. 11); Plaintiff's Motion for a Court Order (Dkt. 21); and Plaintiff's Motion for Default Judgment (Dkt. 27) are DENIED as MOOT.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to close this civil matter and forward a copy of this Memorandum Opinion and Order to Plaintiff's last address on file.

IT IS SO ORDERED.

Alexandria, Virginia
July 20, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

11